# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 16-1266

———————————————

United States of America

*Plaintiff - Appellee*

v.

Dontre D'Sean McHenry

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Minnesota - St. Paul

——————————

Submitted: October 21, 2016
Filed: February 24, 2017

——————————

Before LOKEN, SMITH, and COLLOTON, Circuit Judges.

——————————

LOKEN, Circuit Judge.

Dontre D'Sean McHenry pleaded guilty to one count of sex trafficking a minor in violation of 18 U.S.C. § 1591. The district court[1] varied downwards from his advisory guidelines range, life in prison, and sentenced McHenry to 293 months.

———————————————

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

McHenry appeals his conviction and sentence, arguing the district court erred in denying his timely motion to withdraw his guilty plea without an evidentiary hearing; committed procedural sentencing error by imposing an obstruction-of-justice enhancement and denying an acceptance-of-responsibility reduction, see U.S.S.G. §§ 3C1.1 and 3E1.1; and improperly weighed the 18 U.S.C. § 3553(a) sentencing factors in imposing a substantively unreasonable sentence. We affirm.

## I. Background.

**A. McHenry's Arrest.** On March 12, 2014, Minneapolis Police Sergeant Sherral Schmidt, investigating sex trafficking, discovered an "escort" advertisement on backpage.com featuring photographs of a girl listed as "Available Now" who resembled a juvenile previously rescued from sex traffickers and recently reported missing from her home. Sergeant Grant Snyder reviewed the ad, agreed the girl looked like a known sex trafficking victim, and called the phone number listed in the ad to set up a "date." A female answered, identified herself as "Honey," and told Sergeant Snyder to get a hotel room and call her back. Believing the ad depicted a known juvenile being exploited by sex traffickers, Snyder submitted an Exigent Circumstance Request Form ("E911 Form") to T-Mobile, the service provider for the cell phone number listed in the advertisement. Snyder certified that an emergency existed because a "Juvenile sex trafficking victim [was being] held against her will and trafficked by organized conspiracy." T-Mobile advised that it listed Tony Brown as the subscriber for the phone. T-Mobile also provided real-time location data for the phone number, which soon informed officers that the victim's likely location was a Motel 6 in Roseville, Minnesota.[2]

---

[2]The Stored Communications Act authorizes an electronic communication service provider to disclose subscriber information to a law enforcement officer "if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency." 18 U.S.C. § 2702(c)(4). Snyder requested current

When the officers arrived at the Motel 6, staff provided information indicating the juvenile was in room 114, recently rented to Jennifer VonHagen. Observing VonHagen leaving room 114, Sergeant Snyder showed her the advertisement pictures. VonHagen said the juvenile in the ad was in room 114 with an adult male and consented to officers entering the room. Inside, the officers found McHenry with J.E., a 17-year-old juvenile female. J.E. was not the known juvenile they were expecting to find, but J.E. confirmed that the ad depicted photographs of her for the purpose of soliciting sex for money. The officers arrested McHenry, finding a small amount of methamphetamine and a Visa card used to pay for the ad. They secured the room and applied for a search warrant. Minneapolis Police executed the warrant the next day, finding seven cell phones, including the black T-Mobile phone referenced in the advertisement. A subsequent warrant search of the phone revealed that the settings listed J.E.'s email account, and that J.E. used the phone's Instagram application. According to VonHagen, McHenry used a different phone.

McHenry was charged with sex trafficking of minors in violation of 18 U.S.C. §§ 1591 and 1594(c). The district court appointed attorney Paul Edlund to represent McHenry at his June 2014 detention hearing. Edlund had successfully defended McHenry in a state court prosecution charging him with third degree sexual conduct against a 17-year-old victim, a case dismissed in 2013. The district court detained McHenry pending trial and ordered him to refrain from contacting any victim because he had repeatedly called J.E. and had directed his father to visit J.E. A July superseding indictment charged McHenry with three counts of sex trafficking of a minor and one count of sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. §§ 1591 and 1594(a).

---

subscriber information, call detail records with cell site information, and real-time location of the mobile device. See generally United States v. Caraballo, 963 F. Supp. 2d 341, 346, 350 (D. Vt. 2013), aff'd, 831 F.3d 95, 99-100 (2d Cir. 2016).

**B. The Suppression Motion.** Attorney Edlund filed a motion to suppress all physical evidence obtained as a result of the "warrantless entry and search of The Motel 6, Room 114, Roseville, Minnesota on March 12, 2014." At the August 13 evidentiary hearing, the government introduced the search warrant into evidence without objection and presented testimony by Officer John Jorgensen Jr. of the Roseville Police Department. Edlund cross-examined Officer Jorgensen at length about his contact with VonHagen, and whether he had consent to enter the motel room and probable cause to arrest McHenry. The defense called no witnesses. The government argued that the warrant contained evidence of probable cause because "Sgt. Snyder had been tracking the phone number listed on that Backpage ad, had made calls, had communication with who he believed to be a minor, identified herself as honey and they were arranging to set up a date." Edlund's post-hearing brief argued the probable cause and consent issues. On August 26, Magistrate Judge Franklin Noel issued a Report and Recommendation recommending the motion to suppress be denied because "GPS data obtained pursuant to a tracking order" supported a finding that the officers had probable cause to arrest McHenry for promotion of prostitution. McHenry did not file objections to the Report and Recommendation, and the district court adopted it. See United States v. McHenry, 2014 WL 4626491 (D. Minn. Sept 15, 2014).

**C. McHenry Pleads Guilty.** On October 8, with trial scheduled to begin October 21, the government sent Edlund a letter setting a deadline of October 10 for McHenry to accept a plea agreement the government offered on August 13. McHenry accepted the agreement, pleading guilty to one count of sex trafficking of a minor in violation of 18 U.S.C. § 1591. At the October 17 change-of-plea hearing, the parties revised the plea agreement to allow McHenry to challenge a sentencing enhancement, and the hearing was delayed thirty minutes to allow McHenry to discuss the plea agreement with attorney Edlund. After the prosecutor and Edlund thoroughly explained to McHenry the terms of the plea agreement and the rights he was waiving by pleading guilty, McHenry and attorney Edlund signed the agreement.

-4-

Before accepting the guilty plea, the district court asked McHenry several questions to ensure he understood the consequences of pleading guilty:

> THE COURT: . . . First, I want to ask you whether you're here voluntarily to plead guilty today. Are you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And in that sense, has anybody forced you to come here, threatened you, coerced you, or done anything to get you to come here this morning to plead guilty?
>
> THE DEFENDANT: No.
>
> *   *   *   *   *
>
> THE COURT: Now, once you plead guilty, it's very difficult to unplead; do you understand that?
>
> THE DEFENDANT: Yes.
>
> *   *   *   *   *
>
> THE COURT: And that's why I want to go over some of the very same things that you've already been asked about. For example, you have a right to have counsel here . . . I know Mr. Edlund has been here before me a number of times. He's a very good lawyer. The question for you is has he been a good lawyer for you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Has he answered all of your questions?
>
> THE DEFENDANT: Yes.

-5-

THE COURT: Has he told you what he thinks would happen if you went to trial in this case?

THE DEFENDANT: Yes.

THE COURT: Has he told you what he thinks will happen -- he can't know for sure -- but what he thinks will happen under this plea agreement?

THE DEFENDANT: Yes.

THE COURT: And you're willing to accept his advice today?

THE DEFENDANT: Yes.

THE COURT: Have you had enough time to talk with him to discuss all of your concerns?

THE DEFENDANT: Yes.

The court then accepted McHenry's plea as knowing and voluntary.

**D.  McHenry Moves To Withdraw the Plea.**  On November 13, 2014, McHenry sent a *pro se* letter requesting to withdraw his plea, alleging that Edlund rarely visited or spoke with McHenry, never explained McHenry's rights, and pressured McHenry into pleading guilty.  McHenry claimed he had difficulty understanding the rights he was waiving at the change-of-plea hearing due to his poor hearing and fetal alcohol syndrome, and he complained that the prosecution was attempting to add new charges and that the guidelines were not being properly applied.  McHenry followed with another letter dated November 28.  On December 5, attorney Edlund moved to withdraw, and the district court appointed new counsel.

Following appointment of new counsel, the government produced the E911 Form Sergeant Snyder submitted to T-Mobile to obtain GPS tracking of the cell phone number listed in the backpage.com advertisement. In a memorandum supporting McHenry's *pro se* motion to withdraw the plea, new counsel argued that the E911 Form "confirmed that the Minneapolis Police Department did not obtain a search warrant prior to having T-Mobile place an 'Emergency 911' GPS trace on the cell phone that ultimately led law enforcement to . . . Mr. McHenry." Therefore, counsel argued, McHenry had a "fair and just reason" to withdraw his guilty plea, see Fed. R. Crim. P. 11(d)(2)(B), either because the E911 Form was new evidence supporting his motion to suppress,[3] or because Edlund provided ineffective assistance in failing to challenge the warrantless search of the cell phone's location data. In addition, counsel argued, the combination of McHenry's hearing impairment, fetal alcohol syndrome, the short time he was given to consider the plea agreement, his flawed relationship with Edlund, and confusion during the plea colloquy provided a fair and just reason to withdraw the plea.

The district court denied McHenry's motion to withdraw without a hearing, concluding first, "the record shows that [McHenry's] plea was intelligent, knowing,

---

[3]This claim is without merit. The government introduced at the suppression hearing Sergeant Schmidt's March 12, 2014 state court Application for Search Warrant and Supporting Affidavit. In that Application, Schmidt averred:

> An exigent tracking order was put up [on] the phone number in the ad.
> The GPS data indicated the phone was at the Motel 6 in Roseville, MN
> and the phone was showing in the north east section of the hotel.

Even if the government did not produce the E911 Form until after new counsel was appointed, the defense knew no later than the suppression hearing that exigent GPS tracking of the phone number had led police to Room 114 of the Motel 6, where J.E.'s admissions resulted in McHenry's arrest. Magistrate Judge Noel found that the GPS data supported his finding of probable cause to arrest McHenry.

and voluntary," and second, McHenry could not establish he was prejudiced by Edlund's failure to raise the GPS tracking issue in the motion to suppress because it was "undisputed that the cell phone at issue belonged to J.E., and McHenry [did] not provide any reason why he had a legitimate expectation of privacy in the phone or in its location." United States v. McHenry, 2015 WL 2402475, at *4-5 (D. Minn. May 20, 2015). McHenry filed a request to file a Motion for Reconsideration, asserting that McHenry would testify at an evidentiary hearing that he purchased and used the black T-Mobile phone, establishing a legitimate expectation of privacy in its location. The district court denied the request without a hearing. Even if McHenry owned the cell phone and had a reasonable expectation of privacy in its real-time location information, the court explained, "law enforcement believed that the number was associated with a minor trafficking victim," and therefore exigent circumstances justified GPS tracking of the phone, and the Stored Communications Act authorized T-Mobile to disclose this information. The court again stated that "McHenry's admission of guilt at the plea hearing was knowing, intelligent, and voluntary," and noted that "he has not asserted his innocence of the charges against him."

## II. Denial of the Motion to Withdraw.

McHenry argues the district court abused its discretion in denying the motion to withdraw his guilty plea and request for reconsideration. "We review both the denial of a motion to withdraw and the refusal to hold a hearing under the abuse of discretion standard." United States v. Morrison, 967 F.2d 264, 268 (8th Cir. 1992). "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." Id. (quotation omitted). Even if a defendant shows a fair and just reason for withdrawal, "the court must consider other factors before granting the motion, namely, whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and

whether the government will be prejudiced if the court grants the motion." United States v. Cruz, 643 F.3d 639, 642 (8th Cir. 2011) (quotation omitted).

McHenry argues that he should be allowed to withdraw his plea and relitigate the motion to suppress. As we have noted, production of the E911 Form after McHenry pleaded guilty was not *newly discovered* evidence supporting a claim that evidence found in the Motel 6 hotel room was the fruit of a Fourth Amendment violation in tracking the T-Mobile cell phone location. The use of exigent GPS tracking was disclosed at the suppression hearing, if not sooner. More significantly, "[a] guilty plea waives all suppression issues not expressly reserved by a conditional plea." United States v. Freeman, 625 F.3d 1049, 1052 (8th Cir. 2010). Therefore, "a belated desire to appeal [or reargue] a suppression ruling is not fair and just reason warranting the withdrawal of a plea of guilty." United States v. Smith, 422 F.3d 715, 724 (8th Cir. 2005), cert. denied, 546 U.S. 1127 (2006).

McHenry responds that Edlund's ineffective assistance in failing to challenge GPS tracking of the black T-Mobile cell phone without a warrant provides fair and just reason for withdrawal of his guilty plea. Edlund's "performance can serve as the requisite 'fair and just reason' for withdrawal only if [McHenry] demonstrates both that his attorney's performance was deficient and that he was prejudiced by it." Cruz, 643 F.3d at 642 (quotation omitted). To establish prejudice, a defendant who claims that counsel ineffectively failed to challenge a search or seizure "must prove that the [Fourth Amendment] claim is meritorious." United States v. Luke, 686 F.3d 600, 605 (8th Cir. 2012) (citations omitted). "To demonstrate a fair and just reason for withdrawal of a plea, appellant must do more than desire to contest the search; he must demonstrate that his position has merit." United States v. Jones, 479 F.3d 975, 978 (8th Cir. 2007). McHenry cannot meet this rigorous standard.

As the district court recognized, the record raises substantial doubt that McHenry had standing to assert Fourth Amendment rights in a cell phone registered

-9-

to another subscriber and being used by J.E. at the time of the GPS tracking. See United States v. Stringer, 739 F.3d 391, 396 (8th Cir. 2014). And even if he had standing to raise this claim, there is substantial doubt that McHenry had a reasonable expectation of privacy in cell phone location information voluntarily provided to T-Mobile. See United States v. Skinner, 690 F.3d 772, 777-81 (6th Cir. 2012). But like the district court, we can leave those serious questions unanswered. Sergeant Schmidt and Sergeant Snyder had a good faith belief that exigent circumstances -- a known juvenile victim of sex trafficking currently being victimized by one or more traffickers -- justified the request that T-Mobile disclose subscriber information and conduct exigent GPS tracking of the cell phone number, as authorized by the Storage Communications Act. See United States v. Gilliam, 842 F.3d 801, 805 (2d Cir. 2016) ("exigent circumstances based on credible information" of child prostitution justified obtaining cell phone location information without a warrant); Caraballo, 831 F.3d at 104-06.

McHenry further contends that Edlund's failure to prepare McHenry for the change-of-plea hearing, his confusion about the plea and deficient hearing, and his lack of adequate time to consider pleading guilty provided fair and just reason to withdraw the plea. This contention is "plainly contradicted by the Rule 11 colloquy at [McHenry's] change-of-plea hearing." United States v. Trevino, 829 F.3d 668, 672 (8th Cir. 2016); see Cruz, 643 F.3d at 642-43; United States v. Green, 521 F.3d 929, 932 (8th Cir. 2008). Allegations that contradict a defendant's statements at the change of plea hearing "are inherently unreliable." United States v. Harris-Thompson, 751 F.3d 590, 603 (8th Cir.), cert. denied, 135 S. Ct. 415 (2014).

The district court expressly found at the change-of-plea hearing and in denying the motion to withdraw that McHenry entered a knowing, intelligent, and voluntary guilty plea. Tellingly, McHenry has never asserted his innocence of the crime which he admitted committing. The district court did not abuse its discretion in denying the motion to withdraw and request for reconsideration without a hearing.

-10-

## III.  Sentencing Issues.

**A.  Alleged Procedural Errors.**  The advisory guidelines provide for a 2-level adjustment if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction."  U.S.S.G. § 3C1.1.  Examples of conduct to which this adjustment applies include "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so."  Id. at comment. n.4(A).

The district court's June 2014 Order for Detention ordered that McHenry "shall have no contact either directly or indirectly . . . with any of the named and unnamed victims and witnesses, including J.E., N.A., J.V., and K.P."  The August 2014 Plea Agreement provided that McHenry "understands and agrees . . . that the Court is required to order the defendant to make restitution to the victims of his crime."  While awaiting sentencing, McHenry sent a long letter from jail to J.E., the victim of his offense of conviction.  Toward the end, McHenry wrote: "if you could look out for me one last time sweetheart and send me a couple dollars.  Anything would help."

The Presentence Investigation Report recommended an obstruction of justice adjustment based on this letter.  McHenry timely objected.  The district court overruled the objection, finding that McHenry's conduct met the obstruction of justice standards because, "[i]n the letter, [McHenry] manipulates the victim[], attempts to re-establish their relationship, and asks her for money, and acknowledges there is a no contact order in place."  On appeal, McHenry argues the district court erred in finding that his conduct constituted obstruction of justice because his "asking for help and financial support . . . is more similar to the examples of non-obstructive conduct set forth at Application Note 5" to § 3C1.1.  We disagree.

-11-

When he wrote the letter, McHenry had agreed that the court could order him at sentencing to pay restitution to J.E., the victim of his offense. J.E. was entitled to participate in the restitution proceedings, for example, by filing an affidavit relating to the amount of her loss. See 18 U.S.C. § 3664(d)(2)(A)(vi). Thus, McHenry's pre-sentencing letter begging J.E. *to send him money* not only violated the court's no-contact order, but was also an unlawful attempt to influence a prospective witness in the sentencing proceedings. Indeed, the attempt may well have been successful, as the district court's Judgment in a Criminal Case recites that mandatory restitution was not being ordered "because the victim[] elected to not participate in any phase of determining the restitution order (18 U.S.C. § 3664(g)(1))." The district court did not clearly err in imposing the obstruction of justice adjustment. See United States v. Replogle, 628 F.3d 1026, 1029-30 (8th Cir.), vacated on other grounds, 132 S. Ct. 401 (2011), adhered to, 678 F.3d 940 (8th Cir. 2012).

The guidelines provide for a 2-level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). When the defendant's conduct results in an obstruction of justice adjustment, he does not qualify for an acceptance of responsibility reduction except in "extraordinary cases." Id. at cmt. n.4. The district court imposed the obstruction of justice adjustment and denied McHenry an acceptance of responsibility reduction, finding that the "conduct in violation of his no contact order indicate[d] his lack of acceptance of responsibility," and no extraordinary circumstances warranted an exception to the general rule. On appeal, McHenry argues the district court erred by imposing the obstruction of justice adjustment and therefore he should have received the acceptance of responsibility reduction. As we have upheld the obstruction of justice adjustment, the district court did not clearly err in denying acceptance of responsibility. In addition, we note that, during allocution at sentencing, McHenry stated, "I would like the record to show that I do not want this plea, and I wish to withdraw my plea." "A defendant's attempt to withdraw his guilty plea may be

evidence that he did not accept responsibility for his offense." United States v. Bastian, 603 F.3d 460, 465 (8th Cir. 2010).

**B. Substantive Reasonableness.** McHenry argues the district court abused its discretion and imposed a substantively unreasonable sentence when it failed to consider all the 18 U.S.C. § 3553(a) sentencing factors and gave inadequate weight to mitigating factors -- his untreated depression, self-medicating with alcohol and drugs, and fetal alcohol syndrome. McHenry's sentence of 293 months in prison, though clearly substantial, was a substantial downward variance from his advisory guidelines sentence of life in prison. "[I]t is nearly inconceivable that the court abused its discretion in not varying downward still further." United States v. Lazarski, 560 F.3d 731, 733 (8th Cir. 2009). After careful review of the record, we conclude the district court did not abuse its wide sentencing discretion. See United States v. Roberts, 747 F.3d 990, 992 (8th Cir. 2014).

The judgment of the district court is affirmed.

_____