# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-3149
_____

United States of America

*Plaintiff - Appellee*

v.

Felix Franz Forjan

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: November 23, 2022
Filed: April 28, 2023

_____

Before COLLOTON, SHEPHERD, and GRASZ, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

After an officer initiated a traffic stop of Appellant Felix Franz Forjan and recovered approximately six pounds of methamphetamine from the vehicle Forjan was driving, he was charged with one count of possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and

(b)(1)(A). After the district court[1] denied Forjan's motion to suppress the methamphetamine, Forjan entered a conditional guilty plea. Prior to sentencing, Forjan filed two pro se motions to withdraw his guilty plea, which the district court[2] denied. The district court sentenced Forjan to 168 months' imprisonment, followed by 5 years of supervised release. Forjan appeals the denials of his motion to suppress and his motions to withdraw his guilty plea. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

On December 20, 2016, Springfield, Missouri Police Officer Jason Copley, who was part of a drug-investigation team, observed a vehicle arrive at a residence that was under police surveillance in Nixa, Missouri, as a suspected drug house. Officer Copley believed that the resident of the house was the supply source for a drug dealer in Springfield. Officer Copley and other officers had previously conducted surveillance on this residence and had observed a high volume of traffic at the house, which he believed was consistent with the traffic that would frequent a business rather than a residence. Officer Copley believed this to be an indication that drug distribution was occurring from inside the residence. In addition, a confidential informant had informed police officers that the resident of the home was a supply source of pound quantities of methamphetamine; however, the confidential informant did not state that the resident was distributing methamphetamine from the residence. Finally, Officer Copley had previously observed two individuals that he knew to be targets of separate drug investigations at the residence.

---

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri, adopting the report and recommendation of David P. Rush, United States Magistrate Judge for the Western District of Missouri.

[2]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

While conducting surveillance on December 20th, Officer Copley observed several vehicles arrive at the residence and leave within a short period of time, which he again believed to be an indication that drug distribution was taking place at the residence. Officer Copley left the residence to follow one of these vehicles intending to conduct a traffic stop but was ultimately unable to initiate a stop. After failing to make a traffic stop, Officer Copley returned to the residence and saw both a motorcycle and a white Ford flatbed pickup truck parked outside. The truck's lights were on, which Officer Copley assumed indicated that the driver did not intend to stay long at the residence or indicated that the driver had inadvertently left them on. After observing the vehicle remain parked outside for roughly 45 minutes, Officer Copley observed the truck drive away from the house.

Officer Copley believed that the driver of the truck was involved in a drug transaction at the residence, and even though the truck remained at the residence for longer than a typical drug transaction would take, Officer Copley also knew from experience that the greater the quantity of drugs involved in a transaction, the longer the transaction typically takes to complete. Based on this belief, Officer Copley contacted Christian County Deputy Sherriff Jeffrey Hook and asked him to conduct a traffic stop of the truck. Deputy Hook encountered the truck at an intersection, where he observed that the truck's front license plate displayed a sticker reading "December 2016." Deputy Hook believed that the truck's registration was expired, and initiated a traffic stop on this basis, as well as on the basis that the truck had been seen leaving a suspected drug house. Deputy Hook was mistaken, however, about the expiration date on the sticker. Because the tag bore the words "December 2016," in accordance with Missouri law, the vehicle's registration was not expired until the first day of January 2017.

Nevertheless, after initiating the traffic stop, Deputy Hook approached the vehicle, and initiated contact with Forjan, the vehicle's driver and lone occupant. Forjan was unable to present a driver's license or proof of insurance for the vehicle. Deputy Hook obtained Forjan's information and ran it through dispatch, which informed him that Forjan's driver's license had been expired since 2001 and that he

had no outstanding warrants. Deputy Hook testified that, once he determined that Forjan did not have a valid license or proof of insurance, "[t]here was no way [Forjan] was going to drive away from the traffic stop." Further, because Forjan's family lived far away and Deputy Hook would not allow someone to pick up the truck without a valid registration or proof of insurance, the only recourse was Forjan's car would be towed and inventoried. Deputy Hook nevertheless sought Forjan's consent to search the vehicle, but Forjan declined, stating that it was his daughter's car. Deputy Hook then asked Forjan to step out of the car, patted him down, and started preparing citations for driving with an expired license and for not having proof of insurance. Deputy Hook called for a canine unit, which arrived while he was writing the citations. When the drug dog circled the vehicle, it alerted to a cigarette pack on the truck bed. The cigarette pack had been in Forjan's pocket, but Forjan had removed it and placed it on the bed of the truck during the pat down. After the drug dog alerted, Forjan admitted that, earlier in the day, he had placed a marijuana cigarette in the cigarette pack. Forjan also admitted that there might be leftover marijuana cigarettes or residue in the vehicle.

Deputy Hook then conducted a full search of the vehicle. In the backseat, he observed a laundry basket full of clothes. After removing the clothing from the top of the basket, Deputy Hook found six bundles wrapped in electrical tape. Deputy Hook cut open one of the bundles and observed a zip-lock bag full of a white substance, which field testing revealed to be methamphetamine. In total, the six bundles comprised approximately six pounds of methamphetamine. Deputy Hook placed Forjan under arrest and called a tow company to tow Forjan's vehicle.

After Forjan was charged with intent to distribute 500 or more grams of methamphetamine, he filed a motion to suppress the evidence obtained during the traffic stop. A magistrate judge held an evidentiary hearing, where both Officer Copley and Deputy Hook testified, before issuing a report and recommendation suggesting that the district court deny the motion to suppress. The magistrate judge determined (1) that Forjan did not have standing to challenge the search; (2) that while Deputy Hook lacked probable cause to stop the truck for an expired

registration because he mistakenly believed the registration had expired, the mistake of law was reasonable; and (3) that Deputy Hook did not have reasonable suspicion to stop Forjan for suspected drug trafficking. After Forjan objected to the report and recommendation, the district court ordered an additional hearing focused on the issues of whether Forjan had standing to challenge the search and whether Deputy Hook had made a reasonable mistake of law in concluding the registration was expired. After hearing Forjan's daughter testify that she had given Forjan permission to drive her truck and testimony from Deputy Hook about his understanding of Missouri law governing vehicle registration, the district court entered an order denying the motion to suppress.

As relevant here, the district court first concluded that Forjan had standing to challenge the search. The district court next ruled that, while Deputy Hook was mistaken in his belief that the vehicle's registration was expired, the mistake was reasonable because Missouri law does not specify whether the month displayed on the sticker is the last month of the registration period or the month after the registration period has expired and whether registration stickers should be interpreted the same way across all different vehicle types. The district court determined that Deputy Hook thus reasonably interpreted the sticker on Forjan's vehicle to mean the registration was expired. Then, in dicta, the district court stated that, even if Deputy Hook's stop of the vehicle were constitutionally impermissible, the inevitable discovery doctrine would apply because Deputy Hook decided that Forjan's truck would be towed and the contents inventoried as soon as he discovered that Forjan did not have a valid driver's license or proof of insurance. Finally, the district court adopted the magistrate judge's conclusions that reasonable suspicion of drug trafficking did not support the traffic stop.

After the district court denied the motion to suppress, the matter proceeded to trial. On the day the trial was to begin, Forjan entered a guilty plea, pursuant to a conditional plea agreement, which preserved his right to appeal the suppression ruling. At the change-of-plea hearing, the district court engaged in a colloquy with Forjan before accepting his guilty plea, during which Forjan affirmed he understood

-5-

the consequences of pleading guilty and was entering the plea freely, knowingly, and voluntarily. Nearly four months after entering his guilty plea, and after receiving the Presentence Investigation Report (PSR) prepared by the United States Probation Office, Forjan filed a pro se motion to withdraw his guilty plea on the basis that his plea was not "intelligently and knowingly" entered because he did not understand the questions asked of him at the change-of-plea hearing. Forjan also argued that he was entitled to withdraw his guilty plea based on ineffective assistance of counsel. Two days later, he filed a duplicate motion.

The district court took up the motions at the beginning of the sentencing hearing. Forjan argued that he had not knowingly or voluntarily entered the guilty plea because, during the change-of-plea hearing, he could not hear or understand the questions the district court was asking him. The district court rejected Forjan's argument, denied the motions to withdraw the guilty plea, and sentenced Forjan to 168 months' imprisonment, which was at the bottom of his United States Sentencing Guidelines range of 168 to 210 months' imprisonment. Forjan appeals.

II.

Forjan first asserts that the district court erred in denying his motion to suppress, arguing that the district court erroneously concluded that Deputy Hook's mistaken belief that Forjan's tag was expired was reasonable. In response, the government asserts that the district court correctly determined that Deputy Hook's mistake of law was reasonable and also urges that Deputy Hook had reasonable suspicion of drug trafficking based on Officer Copley's observations during surveillance of the Nixa, Missouri residence. "In reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its legal conclusions *de novo*." United States v. Cox, 992 F.3d 706, 709 (8th Cir. 2021) (citation omitted).

-6-

A.

"A traffic stop generally must be supported by 'at least a reasonable, articulable suspicion that criminal activity has occurred or is occurring,' and 'a traffic violation—however minor—creates probable cause to stop the driver of a vehicle.'" Id. at 709 (citation omitted). "[I]f an officer makes a traffic stop based on a mistake of law, the legal determination of whether probable cause or reasonable suspicion existed for the stop is judged by whether the mistake of law was an 'objectively reasonable one.'" United States v. Washington, 455 F.3d 824, 827 (8th Cir. 2006) (citation omitted). The "subjective good faith belief about the content of the law is irrelevant to our inquiry, 'for officers have an obligation to understand the laws that they are entrusted with enforcing, at least to a level that is objectively reasonable.'" Id. (citation omitted).

The parties do not dispute, and the district court found, that Deputy Hook was mistaken in his belief that Forjan's license plate sticker revealed he had an expired registration. However, after finding the relevant Missouri statutes ambiguous and Deputy Hook's testimony regarding his mistaken belief credible, the district court determined that Deputy Hook's mistake was objectively reasonable. We disagree. Missouri law requires operators of motor vehicles to register their vehicles and display "the month and year in which the registration shall expire" by affixing a set of tabs to the designated area of the license plate "as evidence of the annual payment of registration fees and the current registration of a vehicle." Mo. Rev. Stat. § 301.130 (2016). A "registration period[] . . . end[s] on the last date of the twelfth month from the date of beginning." Mo. Rev. Stat. § 301.030(1) (2007). Missouri regulations further detail that a penalty may be assessed against a vehicle owner whose application for a registration renewal is "delinquent," that is, "submit[ed] . . . for renewal on the first day of the month following the month of expiration of the license plate." Mo. Code Regs. tit. 12, § 10-23.340. Taken together, Missouri statutes and regulations contain no ambiguity: a registration is valid through the

month and year displayed on the tag of the vehicle's license plate.[3] Thus, a license plate bearing a December 2016 tag means that the vehicle's registration is not expired until the first day of January 2017.

The district court noted that its decision that Deputy Hook's mistake was reasonable was based on Deputy Hook's credibility. R. Doc. 61, at 4 ("The Court finds Deputy Hook's testimony on these issues to be credible and consistent with the relevant statutes and regulations."). But "[t]he Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable. We do not examine the subjective understanding of the particular officer involved." Heien v. North Carolina, 574 U.S. 54, 66 (2014). Regardless of Deputy Hook's understanding, it was not objectively reasonable for an officer in his position to believe that a tag bearing the date December 2016 was expired on December 20, 2016. See id. at 67 ("[A]n officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty bound to enforce."). The license plate tag bearing that registration date thus did not provide reasonable suspicion to initiate the traffic stop.

### B.

The government asserts that, even if Deputy Hook did not have reasonable suspicion to stop Forjan based on an expired tag, he nonetheless had reasonable suspicion to stop Forjan for suspected drug trafficking. Again, we disagree. In addition to a traffic violation, reasonable suspicion that criminal activity is afoot supports a brief, investigatory traffic stop. See United States v. Collins, 883 F.3d 1029, 1031-32 (8th Cir. 2018) (per curiam). "We consider the totality of the

---

[3]Regarding the government's argument about whether the vehicle was a commercial vehicle subject to different registration requirements, this argument is of no moment because, regardless of the type of vehicle registration, a tag expires on the first day following the month and year displayed. Regardless of whether Forjan's vehicle was a commercial or personal vehicle, the December 2016 tag meant that his registration was not expired until the first day of January 2017.

circumstances when determining whether an officer has a particularized and objective basis to suspect wrongdoing." United States v. Roberts, 787 F.3d 1204, 1209 (8th Cir. 2015) (citation omitted). "When a team of law enforcement officers is involved in an investigation, the issue is whether all the information known to the team provided 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the investigative stop." Collins, 883 F.3d at 1032 (citation omitted).

Here, despite the surveillance of the residence and the long-standing investigation into drug dealing, Deputy Hook lacked the requisite reasonable suspicion that Forjan was engaged in drug trafficking. Deputy Hook's knowledge of Forjan's potential criminal activity was based on the information communicated to him by Officer Copley. Although Officer Copley suspected that drug transactions were occurring at the residence, he had not observed any such transactions, nor had the residence ever been searched. Similarly, at this point in the investigation, officers had been unable to conduct any traffic stops of other vehicles seen leaving the residence. Further, Forjan's vehicle remained at the residence for roughly 45 minutes, which Officer Copley testified is longer than the duration of a typical drug transaction. And, although Officer Copley observed Forjan's vehicle leave the residence, he did not see the vehicle arrive and thus did not know if Forjan drove it to the residence or had already been inside when the vehicle arrived. Considering the totality of the circumstances, these facts do not give rise to reasonable suspicion that Forjan was engaged in drug trafficking. Cf. United States v. Stringer, 739 F.3d 391, 395 (8th Cir. 2014) (concluding that totality of the circumstances provided reasonable suspicion of drug activity when officer observed a vehicle leaving a house known for conducting drug transactions, the house had been searched multiple times by a drug task force, and the officer in question had initiated several traffic stops of vehicles leaving the house).

C.

Although Deputy Hook did not have reasonable suspicion or probable cause to initiate the traffic stop of Forjan, that is not the end of the inquiry. While evidence obtained through a Fourth Amendment violation is normally subject to exclusion, this rule is not absolute. See Utah v. Strieff, 579 U.S. 232, 235 (2016) ("But the Court has also held that, even when there is a Fourth Amendment violation, this exclusionary rule does not apply when the costs of exclusion outweigh its deterrent benefits."); id. at 237-38 ("Suppression of evidence . . . has always been our last resort, not our first impulse." (alteration in original) (citation omitted)). One such exception to the general rule of exclusion is the attenuation doctrine, under which "[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.'" Id. at 238 (citation omitted). "The attenuation doctrine evaluates the causal link between the government's unlawful act and the discovery of evidence, which often has nothing to do with a defendant's actions." Id. In determining whether the attenuation doctrine applies, we consider three factors: "first, we look to the 'temporal proximity' between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search. Second, we consider 'the presence of intervening circumstances.' Third, and 'particularly' significant, we examine 'the purpose and flagrancy of the official misconduct.'" Id. at 239 (citation omitted).

The first factor weighs in favor of suppression because the time between the traffic stop unsupported by reasonable suspicion or probable cause and the discovery of the six pounds of methamphetamine was brief. Deputy Hook discovered the methamphetamine only moments after initiating the illegal stop, and, as the Supreme Court has recognized, this factor does not favor attenuation "unless 'substantial time' elapses between an unlawful act and when the evidence is obtained." Id. (citation omitted).

The second factor presents the closest call. The potential intervening circumstance present here is Deputy Hook's discovery that Forjan did not have a valid driver's license or proof of insurance. In Strieff, the Supreme Court found that the discovery of a valid arrest warrant during an illegal investigatory stop where drugs were discovered on the defendant was an intervening circumstance that weighed in favor of applying the attenuation doctrine. Id. at 240-41. There, an officer, who had been investigating reports of a drug house, stopped an individual he saw walking away from the suspected drug house. Id. at 235. After requesting the individual's identification and providing this information to police dispatch, the officer discovered that the individual had an outstanding arrest warrant. Id. Although the officer's stop of the individual was unsupported by reasonable suspicion, the Supreme Court determined that the discovery of an outstanding arrest warrant was an intervening circumstance that was "entirely unconnected with the stop." Id. at 240. The Supreme Court noted that

> the warrant was valid, it predated [the officer's] investigation, and it was entirely unconnected with the stop. And once [the officer] discovered the warrant, he had an obligation to arrest Strieff. "A warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions." [The officer's] arrest of Strieff thus was a ministerial act that was independently compelled by the pre-existing warrant. And once [the officer] was authorized to arrest Strieff, it was undisputedly lawful to search Strieff as an incident of his arrest to protect [the officer's] safety.

Id. at 240-41 (citations omitted). Although this case involves the discovery of an invalid license and a lack of proof of insurance instead of an outstanding warrant, there are sufficient similarities between the circumstances to conclude that Deputy Hook's discovery was an intervening circumstance weighing in favor of attenuation. There is no dispute that Forjan's license expired in 2011, which far predated the traffic stop. Further, his invalid license and lack of insurance, while discovered through the course of the stop, were wholly unconnected to the purposes of the stop—the mistaken belief Forjan's tags were expired or the reasonable suspicion of drug activity. And an officer who discovers an unlicensed driver has a duty to

prevent the driver from continuing to illegally drive the vehicle. Similar to the search incident to arrest that necessarily followed the arrest in Strieff, see id. at 240, the impounding and inventory search of the vehicle—which Deputy Hook testified would have occurred even if the drug dog had not alerted—would have led to the discovery of the methamphetamine. Thus, on the facts of this case, the invalid driver's license broke the causal chain between the unlawful stop and the discovery of methamphetamine. Accordingly, this factor weighs in favor of attenuation.

The third factor also weighs in favor of attenuation because, while Deputy Hook's mistaken belief that Forjan's vehicle tag was expired was not reasonable, it was a good-faith mistake. The third factor of the attenuation doctrine is "particularly significant," id. at 239, and it reflects the policy underlying the exclusionary rule— deterrence of police misconduct—"by favoring exclusion only when the police misconduct is most in need of deterrence—that is, when it is purposeful or flagrant," id. at 241. There is no evidence in the record that Deputy Hook's conduct was purposeful or flagrant. Indeed, the district court accepted Deputy Hook's testimony that he genuinely—but mistakenly—believed that Forjan's tag was expired and supported the traffic stop and that he believed he had reasonable suspicion that Forjan was engaged in drug trafficking. See United States v. Herrera-Gonzalez, 474 F.3d 1105, 1113 (8th Cir. 2007) ("An unreasonable mistake alone is not sufficient to establish flagrant misconduct."); see also Strieff, 579 U.S. at 243 ("For the violation to be flagrant, more severe police misconduct is required than the mere absence of proper cause for the seizure."). Accordingly, while the stop was unlawful, "[Deputy Hook's] conduct thereafter was lawful." Strieff, 579 U.S. at 241.

Verifying whether a driver has a valid license and proof of insurance is a part of the "negligibly burdensome precautio[n][s]," see id. (first alteration in original), of a normal traffic stop, and utilizing a drug dog while writing citations for lack of a valid license is similarly permissible. See United States v. Navarette, 996 F.3d 870, 874 (8th Cir.), cert. denied, 142 S. Ct. 475 (2021) ("'Beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to

the traffic stop,'" such as 'checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.'" (citation omitted)); see also Rodriguez v. United States, 575 U.S. 348, 355 (2015) ("An officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual."). Given the foregoing facts, "there is no indication that [Deputy Hook's] unlawful stop [of Forjan] was part of any systemic or recurrent police misconduct." Strieff, 579 U.S. at 242. In sum, "all the evidence suggests that the stop was an isolated instance of negligence that occurred in connection with a bona fide investigation of a suspected drug house." Id.

Considering the factors together, the unlawful stop was sufficiently attenuated in this case by the discovery of Forjan's expired license and lack of insurance. Thus, despite the unlawful stop of Forjan, "deterrence benefits" of excluding the evidence do not "outweigh its substantial societal costs," see id. at 237, and the district court did not err in denying Forjan's motion. See Interstate Bakeries Corp. v. OneBeacon Ins. Co., 686 F.3d 539, 542 (8th Cir. 2012) ("We may affirm the judgment of the district court 'on any basis disclosed in the record, whether or not the district court agreed with or even addressed that ground.'" (citation omitted)).

III.

Forjan next argues that the district court erred in denying his motions to withdraw his guilty plea because Forjan's plea was not knowing and voluntary and he gave up substantial rights without fully understanding what they were. Additionally, he argues that, at the very least, Forjan was entitled to a hearing on the motions. Forjan also asserts that the change-of-plea hearing was insufficient under Rule 11 of the Federal Rules of Criminal Procedure. We address each argument in turn.

-13-

## A.

First, Forjan argues that the district court erred in denying his motions because his guilty plea was not knowing and voluntary. The government responds that Forjan's failure to raise this issue before the district court renders us unable to review it on appeal. We review the denial of a motion to withdraw for abuse of discretion. United States v. McHenry, 849 F.3d 699, 705 (8th Cir. 2017). A claim that a plea was not knowing and voluntary is generally reviewed de novo, United States v. Goodson, 569 F.3d 379, 382 (8th Cir. 2009) but "such a claim would not be cognizable on direct appeal where he failed to present it to the district court in the first instance by a motion to withdraw his guilty plea," United States v. Foy, 617 F.3d 1029, 1033-34 (8th Cir. 2010).

Initially, we address the government's assertion that Forjan is foreclosed from raising the claim that his plea was not knowing and voluntary. The government argues that "Forjan has largely abandoned the arguments he made in the district court and now contends that his plea was unknowing and involuntary because he was confused about the acceptance-of-responsibility reduction and his appellate rights." Appellee's Br. 47-48. We agree. In his motions to withdraw, Forjan raised only the claim that he could not hear and understand the questions at the change-of-plea hearing and that his counsel had been ineffective. On appeal, he again asserts he had difficulty hearing the proceedings. However, he additionally asserts that his plea was not knowing and voluntary because he was confused about whether he would be entitled to an acceptance-of-responsibility reduction if he pled guilty without a plea deal; he was improperly informed about the waiver of his appellate rights; and he was misled about the effect of an agreed-upon sentence in the plea agreement when no such agreed sentence existed. Notwithstanding that Forjan's additional arguments appear to be a mere "change of heart," see United States v. Maxwell, 498 F.3d 799, 802 (8th Cir. 2007), we cannot consider these additional arguments on appeal because the only basis for his motions to withdraw his guilty plea was his inability to hear or understand the proceedings during the change-of-plea hearing. See Foy, 617 F.3d at 1033-34 (refusing to consider claim, raised for the first time on

-14-

appeal, that plea was not knowing and voluntary based on defendant's impaired mental state because he did not raise ground before district court in motions to withdraw and claim was thus not cognizable on appeal).

We now turn to the merits of the claim Forjan properly preserved for appeal: that he could not hear or understand the change-of-plea hearing. "A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d). "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." McHenry, 849 F.3d at 705. Further, "[e]ven if a defendant shows a fair and just reason for withdrawal, 'the court must consider other factors before granting the motion, namely, whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion.'" Id. (citation omitted).

Forjan asserts that he could not hear or understand the district court's questions, which provides a basis for withdrawal of his guilty plea. This argument appears premised on one instance in the transcript where Forjan's counsel asked the government's counsel to remove her mask so that Forjan could hear her better. Rather than this record demonstrating that Forjan did not hear what was going on during the change-of-plea hearing, it instead demonstrates that, when he had trouble hearing, his hearing issues were accommodated. Second, despite Forjan's protestations to the contrary, his colloquy with the district court demonstrates that he heard and understood the district court's questions. Although some of the district court's inquiries required no more than a "yes" or "no" response, Forjan also responded to other questions from the district court with more thorough answers, demonstrating that he understood what the district court was asking him. Given that the record generally belies Forjan's contentions, we find no error in rejecting the motions to withdraw the guilty plea on this basis. See id. at 706 ("Allegations that

-15-

contradict a defendant's statements at the change of plea hearing 'are inherently unreliable.'" (citation omitted)).

Forjan next argues that he was entitled to, at the very least, a hearing on his motions. Like a denial of a motion to withdraw a guilty plea, we review a district court's refusal to hold a hearing on a motion to withdraw for an abuse of discretion. Id. at 705. However, "[t]he trial court can deny a motion to withdraw a guilty plea without holding an evidentiary hearing if the allegations in the motion are inherently unreliable, are not supported by specific facts or are not grounds for withdrawal even if true." United States v. Harris-Thompson, 751 F.3d 590, 603 (8th Cir. 2014). Given that Forjan's grounds for withdrawal of his guilty plea are contradicted by the record, we find no error in the district court's decision to decline an evidentiary hearing before ruling on the motions.

B.

Next, Forjan's assertion that the plea hearing was insufficient under Rule 11 is similarly meritless. "Instances of noncompliance with Rule 11 may be raised for the first time on appeal," as Forjan has done here, "but our review is for plain error." Foy, 617 F.3d at 1034. To succeed on plain error review, Forjan "must show not only an error, that was plain, but also that there is a 'reasonable probability that but for the error, he would not have entered a guilty plea.'" United States v. Thompson, 770 F.3d 689, 694 (8th Cir. 2014) (citation omitted). And, even if Forjan reaches this threshold, "relief is discretionary and the court should not exercise that discretion unless the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." Id. (alteration in original) (citation omitted).

Rule 11 imposes various obligations on the district court before accepting a guilty plea. Among these, the district court "must inform the defendant of, and determine that the defendant understands," *inter alia*, "the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors

-16-

under 18 U.S.C. § 3553(a)" and "the terms of any plea-agreement provision waiving the right to appeal or to attack the sentence." Fed. R. Crim. P. 11(b)(1)(M), (N). Forjan's claim that the district court did not comply with this provision mirrors his argument that his guilty plea was not knowing and voluntary. He asserts that the district court made misstatements of the law about whether he would be entitled to an acceptance-of-responsibility reduction if he pled guilty without a plea deal; failed to adequately explain the waiver of his appellate rights; and misled him about the effect of an agreed-upon sentence in the plea agreement when no such agreed sentence existed.

Although Forjan devotes significant attention to the purported errors the district court made in discussing the effect of pleading guilty, he wholly fails to demonstrate that, but for these alleged errors, he would not have entered a guilty plea. Even assuming for the purposes of analysis that the district court plainly erred with respect to each of the statements identified by Forjan, the record demonstrates that Forjan's intention was to plead guilty, and that his guilty plea was not procured based on any alleged misstatements. The transcript of the change-of-plea hearing contains specific instances where Forjan or his counsel affirmed that Forjan's desire was to plead guilty and avoid a trial. See, e.g., R. Doc. 147, at 3 ("From what I gather, he's not interested in having a trial today."); R. Doc. 147, at 3 ("I'd like to settle this."). We therefore find no error that seriously affects the fairness, integrity, or public reputation of the judicial proceedings.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

COLLOTON, Circuit Judge, concurring in the judgment.

In my view, police officers permissibly stopped appellant Forjan's vehicle based on reasonable suspicion that he was involved in drug trafficking activity. I

-17-

would affirm the denial of Forjan's motion to suppress on that basis. I do not join Part II of Judge Shepherd's opinion.

A police officer stopped Forjan on December 20, 2016, shortly after he left a trailer home in Nixa, Missouri. Investigators previously had identified the resident of the trailer as a substantial drug trafficker. Within the previous six months, a reliable confidential informant advised investigators that the Nixa resident supplied a drug dealer in Springfield, Missouri, with pounds of methamphetamine. Investigators observed the Nixa resident at the home of the Springfield dealer, and they saw the Springfield dealer visit the Nixa trailer.

Officers saw two other "targets" of drug investigations—persons who had been found with drugs or were the subject of reports implicating them in drug trafficking—visit the Nixa trailer. Investigators also conducted surveillance at the Nixa trailer and observed periods during which there was a high volume of traffic at the residence. Investigators knew from training and experience that a high volume of traffic indicated business transactions at a residence. They thus inferred reasonably that the resident in Nixa, who had been identified by a reliable informant as a drug trafficker, was distributing drugs from the trailer.

On December 20, investigators conducted surveillance outside the Nixa trailer. They observed multiple vehicles arrive at the trailer. They attempted to follow one vehicle as it departed, but the officers were unable to make contact with the driver.

Investigators then returned to the Nixa trailer. They saw Forjan's white flatbed truck parked outside. The operator of the truck left the headlights turned on, so investigators reasonably inferred that he was a transient visitor who intended to stay for only a short time. About forty-five minutes to an hour later, Forjan departed the trailer and drove away in the truck. Officers reasonably inferred that the person who drove away in the truck was the same person who recently had arrived in the

truck for a short visit. Shortly thereafter, officers stopped Forjan's truck and found six bundles of methamphetamine weighing a total of more than six pounds.

"A police officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Collins*, 883 F.3d 1029, 1032 (8th Cir. 2018) (per curiam) (internal quotations omitted). Under this authority, an officer may "briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity." *Id.* (internal quotation omitted).

A "reasonable, articulable suspicion," of course, does not mean that an officer must be able to prove beyond a reasonable doubt or by a preponderance of the evidence that a suspect is engaged in criminal conduct. The officer need not exclude all reasonable or even likely possibility of innocent conduct. The information need not meet the standard of probable cause—*i.e.*, "a fair probability" that the suspect is committing a crime. The quantum of information required to establish reasonable suspicion is "obviously less than is necessary for probable cause," *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020) (internal quotation omitted), and the threshold is "not high." *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997). In a drug case, "independent knowledge of a person's prior involvement with narcotics is not required to find reasonable suspicion." *Collins*, 883 F.3d at 1032; *see United States v. Bustos-Torres*, 396 F.3d 935, 942-43 (8th Cir. 2005); *United States v. Buchannon*, 878 F.2d 1065, 1066-67 (8th Cir. 1989).

An investigative stop is reasonable when "specific and articulable facts which, taken together with rational inferences from those facts," provide officers with a "particularized and objective basis for suspecting legal wrongdoing." *Terry v. Ohio*, 392 U.S. 1, 21 (1968) (first quotation); *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (second quotation) (internal quotation omitted). Scientific or empirical data are not required: "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). At the same time, the Fourth Amendment

-19-

forbids a seizure based on a mere "hunch"—that is, an "inchoate and unparticularized suspicion," *id*., at 124, meaning a conclusion "derived from intuition in the absence of articulable, objective facts." *United States v. Singletary*, 798 F.3d 55, 60 (2d Cir. 2015).

The totality of the circumstances here provided officers with a reasonable, articulable basis to believe that Forjan was involved in drug trafficking activity. First, investigators had ample grounds, based on a reliable informant and surveillance, to believe that the resident of the Nixa trailer was involved in distributing substantial quantities of methamphetamine. Having observed three known drug targets recently visit the Nixa trailer, and high volumes of traffic at the trailer on several occasions, investigators also had reasonable grounds to believe that the Nixa resident was distributing drugs from the trailer.

Second, on December 20, officers had a reasonable basis to believe that Forjan was a transient visitor to the trailer: he left the headlights of his truck turned on while it was parked outside. That fact is a specific, articulable reason to believe that Forjan planned to stay only a short time and was not, say, a guest attending a sit-down dinner or settling in to watch a two-hour basketball game. Although Forjan was present for forty-five minutes to an hour, the officers had a specific, articulable basis to believe that he intended on his arrival to stay only briefly. The experienced narcotics investigator in charge also was aware that larger drug transactions take more time than small deals, because the parties have more drugs to weigh and more cash to count. Officers knew that the Nixa resident distributed pound quantities of methamphetamine.

This court has recognized that an unknown person's visit to the residence of known drug distributor can establish *probable cause* to detain the departing visitor where his actions "conformed to the patterns of the drug trade." *Buchannon*, 878 F.2d at 1067. The circumstances here satisfied the lower standard of reasonable suspicion. Officers had a specific, articulable basis to believe that the Nixa resident was distributing drugs from the trailer. They had a specific, articulable basis to

believe that Forjan visited the trailer with an intent to remain only briefly. They were aware that other visitors to the Nixa trailer in recent months were known drug traffickers. They knew from training and experience that transient visitors to the Nixa trailer conformed to the pattern of the drug trade. This combination of circumstances supported a commonsense inference that Forjan had visited the trailer for the purpose of drug trafficking activity. The investigative stop of his truck was therefore reasonable under the Fourth Amendment.

For these reasons, the district court properly denied Forjan's motion to suppress evidence. I join Part III of Judge Shepherd's opinion regarding Forjan's other contentions on appeal. I therefore concur in the decision to affirm the judgment of the district court.

GRASZ, Circuit Judge, dissenting.

I agree with all of Judge Shepherd's opinion except for Section II.C. Like Judge Shepherd, I conclude the license plate tag did not provide Deputy Hook with probable cause to initiate the traffic stop and the facts available to Deputy Hook did not give rise to reasonable suspicion that Forjan was involved in criminal drug activity. But I decline to affirm the district court's denial of the motion to suppress based on the attenuation doctrine. In my view, the attenuation doctrine is not applicable here because of the close temporal proximity between the unconstitutional stop and the discovery of the evidence, combined with the absence of the special circumstances surrounding pre-existing warrants. *See Utah v. Strieff*, 579 U.S. 232, 239–42 (2016) (setting forth the three-factor test for application of the attenuation doctrine). The result of today's decision is that Forjan's conviction stands despite a majority of the court concluding Deputy Hook did not have reasonable suspicion to stop Forjan, and without a majority of the court concluding the attenuation doctrine applies to these facts. From this result, I respectfully dissent.

———————————————