# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2299

_____

United States of America

*Plaintiff - Appellee*

v.

Wilbert V. Ladue, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: April 4, 2017
Filed: August 10, 2017

_____

Before WOLLMAN and LOKEN, Circuit Judges, and ROSSITER,[*] District Judge.

_____

LOKEN, Circuit Judge.

Wilbert Ladue, Jr. was charged with two counts of aggravated sexual abuse of a child under twelve years of age in Indian country in violation of 18 U.S.C. § 2241(c). Avoiding the statute's mandatory minimum sentence of thirty years in

_____

[*]The Honorable Robert F. Rossiter, Jr., United States District Judge for the District of Nebraska, sitting by designation.

prison, Ladue agreed to plead guilty to two counts of aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(a)(1), which carries no minimum sentence. At his change-of-plea hearing, Ladue admitted sexually abusing two young daughters of former girlfriends. The district court[1] accepted the guilty plea, finding that Ladue was competent, clearly and fully understood the charges, and entered a knowing and voluntary plea. Several weeks later, after a hearing, the court denied Ladue's motion to withdraw his plea. At sentencing, the court varied downward and sentenced Ladue to 240 months in prison. He appeals, arguing the court erred in denying his motion to withdraw the plea because the court violated Rule 11(b)(1)(I) of the Federal Rules of Criminal Procedure by failing to advise at the change-of-plea hearing that Ladue was pleading guilty to a Class A felony, and thus was not eligible for a sentence of probation. See 18 U.S.C. § 3561(a)(1). Reviewing this contention for plain error and the denial of a motion to withdraw for abuse of discretion, see United States v. Green, 521 F.3d 929, 931 (8th Cir. 2008), we affirm.

## I.

At Ladue's change-of-plea hearing, the district court engaged in what Ladue admits was an extensive plea colloquy. Ladue confirmed that he had read the entire Plea Agreement, had received sufficient time to review it with his attorneys, and had not been forced, threatened, or intimidated to plead guilty. When Ladue requested clarification as to who would decide his sentence, the court engaged in a thorough explanation of the Sentencing Guidelines, advising Ladue that his advisory guidelines range was 360 months to life based on the offense and Ladue's criminal history, that the maximum penalty for each offense was life imprisonment, and that the court could, but need not, follow the government's recommendation of a twenty-year prison term. When the court asked if he understood, Ladue responded, "Yes, sir." The court

---

[1]The Honorable Daniel L. Hovland, Chief Judge of the United States District Court for the District of North Dakota.

also referenced the facts of the offenses as stated in the Plea Agreement. Ladue stated that he did not disagree with any of the fact statements. Government counsel stated that forensic examinations of the victims confirmed these facts. Ladue's counsel said the government hit the "nail on the head with most of the facts." At that point, Ladue stood up and apologized to his two victims in the courtroom, stating, "With my whole heart I am sorry." The court accepted Ladue's guilty plea.

Six weeks after pleading guilty, Ladue sent the court a letter seeking to withdraw his guilty plea because he did not "understand" how it worked. He complained that the Federal Public Defender's Office changed his attorney days before the Plea Agreement was signed and submitted. According to Ladue, he simply repeated the words new attorney Ryan Costello told him to say by pleading guilty. At the outset of the hearing on the motion to withdraw, the court informed Ladue that he had "some convincing to do" after admitting in open court that he committed these sexual offenses and apologizing to the victims for his conduct. Ladue asserted he did not have enough time to review the Plea Agreement and did not understand it. The court noted this assertion was directly contrary to Ladue's answers at the change-of-plea hearing. In addition, after pleading guilty, Ladue provided the Probation Office a detailed admission of his offenses.

At the motion-to-withdraw hearing, Ladue complained that his first attorney, who withdrew days before the Plea Agreement was signed, provided possible sentencing ranges that Ladue might receive if he pleaded guilty; the low end of some ranges included probation. Ladue's second attorney, Costello, told Ladue before the change-of-plea hearing that he would not ask for probation if Ladue pleaded guilty. Costello said he told Ladue probation might be "technically possible [but] wouldn't be something the Court would even entertain." Ladue admitted to the court that he recalled this conversation.

In denying Ladue's motion to withdraw his plea, the district court noted that it had put its "full trust into the responses to the questions" asked of Ladue at the change-of-plea hearing. Carefully reviewing the transcript of that hearing, the court stated, "I don't know what more any judge could do at a change of plea hearing than the litany of questions that I asked of you and which to me revealed that you had a clear understanding of what the Plea Agreement was, [and] what the consequences were of pleading guilty." The court said it expected that, if Ladue had not "fondled two young girls," he would have said so when asked by the court.

## II.

Ladue appeals the denial of his motion to withdraw his guilty plea. Prior to sentencing, a district court may permit withdrawal if the defendant "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "There is no *right* to withdraw; the plea of guilty is a solemn act not to be disregarded because of belated misgivings about its wisdom." Green, 521 F.3d at 931 (quotation omitted). "When a defendant has entered a knowing and voluntary plea of guilty at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." United States v. Morrison, 967 F.2d 264, 268 (8th Cir. 1992) (quotation omitted).

Ladue does not raise on appeal the arguments made to the district court in support of this motion -- that he did not understand the plea and was coerced by counsel into pleading guilty.[2] Rather, he argues the district court erred in denying the motion because the court failed to advise him at the change-of-plea hearing that, by

---

[2]These assertions and Ladue's unsupported claim of innocence would not provide a basis for reversing the district court's ruling because they "contradict[ed his] statements at the change of plea hearing" and therefore "are inherently unreliable." United States v. McHenry, 849 F.3d 699, 706 (8th Cir. 2017).

pleading guilty to aggravated sexual abuse, a Class A felony, see 18 U.S.C. § 3559(a)(1), he would be ineligible for a sentence of probation, see 18 U.S.C. § 3561(a)(1) ("A defendant . . . may be sentenced to a term of probation unless . . . the offense is a Class A or Class B felony and the defendant is an individual."). Ladue argues the court was required to explain this because Rule 11(b)(1)(I) provides that, prior to accepting a plea, "the court must inform the defendant of, and determine that the defendant understands, . . . any mandatory minimum penalty." As Ladue failed to raise this objection to the district court, our review is for plain error. See United States v. Haubrich, 744 F.3d 554, 558 (8th Cir. 2014).

**A.** We reject Ladue's contention that ineligibility for probation is a "mandatory minimum penalty" within the meaning of Rule 11(b)(1)(I). Section 3561(a)(1) does not impose a minimum sentence; it permits probation in certain circumstances. See United States v. Lahey, 186 F.3d 272, 274 (2d Cir. 1999); United States v. Elliott, 971 F.2d 620, 621-22 (10th Cir. 1992); cf. United States v. Zamora-Andrade, 544 F. App'x 438, 439 (5th Cir. 2013).[3] Rule 11(b)(1)(I) requires a court to inform defendants of minimum sentences that it *must* impose, not sentences that it *cannot* impose. If construed as Ladue argues, Rule 11(b)(1)(I) would conflict with § 2241(a), which states that an aggravated sexual abuse offender "shall be fined under this title, imprisoned for any term of years or life, or both." If § 3561(a)(1) *imposed* a mandatory prison term, instead of merely precluding a sentence of probation, the district court could *never* impose only a fine. As the Advisory Committee Notes to the 1974 amendment adding the "mandatory minimum penalty" language explained:

> The objective is to insure that a defendant knows what minimum sentence the judge **must** impose . . . . This information is usually readily

---

[3]In the Sentencing Reform Act of 1984, Congress intended that § 3561 change prior law by characterizing probation as "a type of sentence rather than a suspension of the imposition or execution of a sentence." S. Rep. No. 225, 98th Cong., 2d Sess. 88 (1983).

ascertainable from the face of the statute defining the crime, and thus it is feasible for the judge to know specifically what to tell the defendant.

Thus, the district court did not violate Rule 11(b)(1)(I), because no "mandatory minimum penalty" applied in this case.

**B.** Alternatively, even if Rule 11 required the court to advise Ladue that he was not eligible for probation, a departure from Rule 11 requirements "is harmless error if it does not affect substantial rights." See Fed. R. Crim. P. 11(h). "[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004). Ladue fails to meet this rigorous burden.

First, attorney Costello advised Ladue before he entered his guilty plea that probation was not an option. Ladue admitted recalling this conversation. Costello made clear Ladue was not going to receive a sentence of probation, yet he pleaded guilty anyway. Indeed, he entered his guilty plea after the district court informed him he could be sentenced to life in prison. In United States v. Gray, 581 F.3d 749, 753-54 (8th Cir. 2009), on which Ladue relies, the district court failed to advise the defendant he faced a mandatory minimum sentence and a statutory maximum of life imprisonment by pleading guilty, as Rule 11(b)(1)(H) and (I) require. Here, the court went beyond its Rule 11 obligations by explaining Ladue's advisory guidelines range, which did not include probation. See United States v. Granados, 168 F.3d 343, 345 (8th Cir. 1999) ("[A] defendant who pleads guilty has no right to be apprised of the sentencing options outside the statutory maximum and minimum sentences.").

Second, Ladue sought to withdraw his plea long before he learned he was not eligible for probation so he cannot show that the court's failure to advise that

probation was unavailable caused his decision to plead guilty. At the hearing on his motion to withdraw, he told the district court a variety of other reasons for wanting to withdraw the plea. When he later learned from the Presentence Investigation Report that he was ineligible for probation because he pleaded guilty to Class A felonies, he did not renew his motion to withdraw the plea on this ground. This sequence of events demonstrates that Ladue's claim that the decisive factor in his decision to plead guilty was whether he was eligible for probation is simply not credible. See United States v. Gomez, 326 F.3d 971, 975 (8th Cir. 2003).

The judgment of the district court is affirmed.

_____