# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2134
_____

United States of America

*Plaintiff - Appellee*

v.

Jonathan Stacy Berrier

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: January 8, 2024
Filed: August 6, 2024
_____

Before LOKEN, ARNOLD, and KELLY, Circuit Judges.
_____

LOKEN, Circuit Judge.

Jonathan Stacy Berrier appeals the sentence the district court[1] reimposed after we remanded for resentencing. We remanded because the court had imposed a substantial upward variance without resolving disputed critical fact allegations in the

_____

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

revised Presentence Investigation Report ("PSR") that the government relied on in urging a variance. United States v. Berrier, 28 F.4th 883, 887-88 (8th Cir. 2022) (Berrier I). Additional background facts are found in Berrier I. We affirm.

## I.

A June 2018 indictment charged North Carolina resident Berrier with enticing a minor living in Arkansas to engage in sexual activity in violation of 18 U.S.C. § 2422(b), and with traveling in interstate commerce to engage in illicit sexual conduct with a minor in violation of § 2423(b). After the government produced incriminating communications between Berrier and the thirteen-year-old victim ("T.H."), Berrier pleaded guilty to the enticing charge in September 2020. The government and Berrier signed a written Plea Agreement which included sentencing stipulations -- that the base offense level is 28, that Berrier should receive two 2-level increases because the offense involved use of a computer and commission of a sex act and a two-level reduction for acceptance of responsibility, and "that the Court is not bound by these stipulations." The government "reserve[d] the right to bring any and all facts which it believes are appropriate to the attention of the Court." Berrier confirmed that "[n]o other promises or inducements" had been made to him, and "no one ha[d] threatened or forced [him] in any way to enter into [the Plea Agreement]."

At the change-of-plea hearing, Berrier admitted he had sex one time with T.H., he was pleading guilty voluntarily, and he was satisfied with counsel's representation. After the government summarized the facts it would introduce into evidence if the parties proceeded to trial, the court asked Berrier if the government's fact statement was correct. Berrier said it was not -- he and the victim had sex one time and "[t]here was no more sexual contact." "I want to plead guilty to what I did. I don't want to plead guilty to what I didn't do." The court then asked Berrier:

THE COURT: Having discussed all of your rights with you, do you still want to enter a plea of guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Have any threats or promises been made to you to get you to plead guilty?

THE DEFENDANT: No.

THE COURT: Okay. Are you pleading guilty voluntarily?

THE DEFENDANT: Yes.

The court accepted Berrier's plea to the enticing charge (Count 1) and dismissed the interstate travel charge (Count 2).

Two months later, the Probation Office published Berrier's PSR, which recommended a five-level increase under USSG § 4B1.5(b)(1) based on T.H.'s statements in a July 2017 interview with FBI agents (Paragraph 12). Berrier objected that he had not engaged in that conduct and the enhancement was not included in the Plea Agreement. The government's e-mail response included additional factual basis supporting the PSR recommendation. Five days before the remote sentencing hearing, the Probation Office published a revised PSR, retaining Paragraph 12 and adding Paragraph 13, which recited, based on the government's response, that T.H. provided law enforcement a "handwritten timeline" detailing Berrier's two trips from North Carolina to Arkansas during which Berrier and T.H. repeatedly engaged in sexual intercourse. Berrier I, 28 F.4th at 885. The revised PSR recommended the five-level increase because Berrier "engaged in a pattern of activity involving prohibited sexual conduct." It noted Berrier's objection to the fact allegations in Paragraphs 12 and 13.

The day before the sentencing hearing, the government moved for an upward variance based largely on the disputed fact allegations in Paragraph 13. At sentencing, Probation supported the § 4B1.5(b)(1) five-level increase. Counsel for Berrier objected to the fact allegations in Paragraph 13 and objected that the § 4B1.5(b)(1) increase was not part of the Plea Agreement's Guidelines stipulations. The government stated it was not urging the § 4B1.5(b)(1) increase because it was "not anticipate[d]," but argued the increase applied and warranted an upward variance because Berrier engaged in more than one sexual encounter with the victim. The district court sustained Berrier's objection to the § 4B1.5(b)(1) increase but granted the government's motion for an upward variance based on Berrier's age (over fifty), his knowledge the victim was only thirteen, the sexually explicit nature of their communications, and his repeated engagement in sexual acts with T.H. over a significant period of time. Agreeing with the government's recommendation, the court sentenced Berrier to 180 months imprisonment, a fifty-percent variance above the top of the advisory guidelines range. The court received the government's exhibits supporting allegations in Paragraph 13 the morning of the hearing. It did not review those extensive materials or rule on Berrier's objections to the fact allegations in Paragraphs 12 and 13 of the revised PSR.

Berrier appealed his sentence. We noted that Berrier and his counsel were not given the revised PSR until the night before sentencing, a violation of Federal Rule of Criminal Procedure 32(g), which requires submission at least seven days before sentencing. Participating remotely, Berrier did not receive the revised PSR prior to the sentencing hearing. This error prejudiced Berrier, as the fact allegations added to the revised PSR in Paragraph 13 established multiple sex acts with the victim that were the basis for the government's motion for an upward variance. "[W]ithout critical fact allegations in the revised PSR relied upon by the government, and denied by Berrier, all the district court had to rely on for a very substantial upward variance was a single admitted act of 'sexual activity' that made Berrier subject to a minimum

-4-

10-year sentence." Berrier I, 28 F.4th at 888.  Accordingly, we vacated the judgment of the district court and remanded for resentencing.  Id. at 886-88.

## II.

On remand, the district court appointed Berrier new counsel, John Barttelt, in July of 2022.  Five months later, Berrier filed a *pro se* motion for leave to withdraw his guilty plea under Federal Rule of Criminal Procedure 11(d)(2)(B), requesting a jury trial.  The stated grounds were "ineffective assistance of counsel and prosecutorial misconduct," the grounds excepted from his waiver in the Plea Agreement of all rights to collaterally attack the conviction.  The motion did not request a hearing.  The district court ordered counsel Barttelt to provide his position on Berrier's *pro se* motion and, if counsel considered it properly filed, "to provide the basis and arguments weighing in favor of withdrawal."  Counsel did not respond by the court's January 19, 2023 deadline.  On January 25, the court denied Berrier's *pro se* motion by docket entry.

On February 8, the court held the first part of Berrier's resentencing hearing. Berrier, speaking on his own behalf though represented by counsel, began by repeating his *pro se* arguments for withdrawal of the guilty plea -- that the government's last-minute motion for an upward variance was a breach of the Plea Agreement that caused him to sign the Agreement, and that trial counsel Danny Glover[2] "failed to properly investigate and defend" the case[3] -- and arguing he should

---

[2]Appointed counsel Glover withdrew from representation after Berrier's first sentence was imposed and did not represent Berrier on his first appeal.  We appointed Berrier new counsel for his first appeal, who then withdrew.  On remand, the district court appointed John C. Barttelt to represent Berrier for resentencing.

[3]The *pro se* motion outlined three specific instances of ineffective assistance. First, counsel Glover refused to find three out-of-state witnesses who would have corroborated Berrier's defense that "any contact with the victim was not designed to

-5-

have a hearing to establish these claims. The government argued a hearing was unnecessary because the government's motion for an upward variance did not breach the Plea Agreement. The district court denied Berrier's motion but said it would allow counsel Barttelt to file a motion for a hearing on the issues Berrier had raised.

During the remainder of the February 8 hearing, the district court first heard testimony from FBI Special Agent Lennie Johnson, who validated the electronic messages between Berrier and T.H. alleged in Paragraph 12 of the revised PSR. Janetta Michaels, a child forensic interviewer with the FBI, then testified that she conducted two interviews of T.H. in May 2017 and again in May 2018, when T.H. showed Michaels the handwritten timeline. This testimony provided foundation for the government's last-minute evidence at the first sentencing hearing and further supported the fact allegations in Paragraphs 12 and 13. See Berrier I, 28 F.4th at 888 (leaving the district court discretion to afford the government a second opportunity to properly support the revised PSR's contested fact allegations).

On April 5, counsel Barttelt moved for reconsideration of Berrier's *pro se* motion to withdraw the plea, restating the arguments made by Berrier *pro se* and requesting a hearing. The district court denied the motion by docket entry the following day. The court resumed Berrier's resentencing hearing on April 12. The hearing began with testimony by T.H.'s grandfather, who had listened in on at least twenty-five sexually-explicit land-line phone conversations between Berrier and his victim. Counsel Barttelt again requested that the court allow Berrier to withdraw his

---

entice her into a sexual act." Second, Glover refused to cross-examine the FBI agent who testified at Berrier's initial sentencing to bring out exculpatory text messages "prov[ing] there was no attempt to entice." Finally, Glover "wrongly pressured [Berrier] to change his plea," resulting in Berrier lying to the district court at the change of plea hearing when he agreed to "one instance of brief sexual intercourse" with the victim at "his counsel[']s insistence." Berrier asserted "[t]here were no instances of intercourse or sexual activity with the victim."

guilty plea, arguing the government breached the Plea Agreement by declining to seek the § 4B1.5(b)(1) increase but then relying on that same conduct to justify an upward variance. The government responded that the parties only "addressed the base offense level" in the Plea Agreement and the government "in no way restricted [itself] from asking for a[n] upward variance."

Berrier, speaking for himself, again asserted that prior counsel Glover had been ineffective and coerced Berrier to plead guilty and to falsely admit sexual activity. Counsel Barttelt added that these fact-intensive issues require a hearing. The government responded that "the issues have been fleshed out" when Berrier asked that new counsel be appointed on the eve of the change-of-plea hearing. Berrier replied that counsel Glover coerced him into pleading guilty on the eve of becoming a state court judge. The district court noted "the only witness you would call would be Danny Glover" and Berrier would expect "he is going to have a different point of view on that." Berrier replied, "Of course." The district court ruled, "My position still is that we don't need to have a hearing on it," unless the government wanted to call former counsel Glover to testify. "I'm going [to] deny the motion and we're going to proceed to sentencing."

The court began by overruling Berrier's objections to Paragraphs 8, 12, 13, and 20 of the revised PSR "based on the evidence that's in the [resentencing] record." The court then determined that Berrier's advisory guidelines range was 120 to 121 months imprisonment (due to the 120-month mandatory minimum), based on a base offense level of 28, a total offense level of 30 based on the Guidelines stipulations in the Plea Agreement, and a criminal history category of I. Considering the § 3553(a) sentencing factors, the court again granted the government's motion for an upward variance and sentenced Berrier to 180 months imprisonment, stating:

> I believe that my sentence that I gave you earlier, 180 months, is an appropriate sentence.

And now that we've taken this evidence on those [PSR] paragraphs that were in dispute, I'm even more convinced based on this record that it's 180 months.

Counsel Barttelt filed a timely notice of appeal from the judgment, commitment order, and sentence; denial of two motions to withdraw the plea; and "all oral findings as stated in the sentencing hearing." Counsel Barttelt then filed a motion for leave to appeal *in forma pauperis* (IFP) and a motion to withdraw as appointed counsel. The district court granted those motions, referring the appointment of appellate counsel to our court because its attempt to appoint counsel from its Criminal Justice Act Panel "has been unsuccessful."

## III.

On appeal, we initially appointed counsel Barttelt. He moved to withdraw at Berrier's request. We granted the motion and appointed Little Rock attorney Marjorie Rogers as Berrier's counsel on appeal. We appreciate her acceptance of the appointment late in this complex case.

## A.

As the foregoing procedural history should make clear, the district court's proceedings on remand produced a resentencing record that carefully corrects the evidentiary gaps that resulted in our prior remand. Berrier does not contend otherwise. Indeed, though these issues were preserved in his notice of appeal, he does not challenge the district court's key procedural sentencing rulings on remand, including the overruling of his objections to disputed paragraphs in the revised PSR. Nor does he argue the district court abused its discretion in again granting an upward variance and reimposing a 180-month sentence. Rather, Berrier raises two issues that were not before us in the first appeal -- whether the court erred in denying his motion

to withdraw the plea, first made following our remand based on an alleged breach of the Plea Agreement that was obvious at the first sentencing hearing; and in denying his request for a hearing on the motion to withdraw based on alleged ineffective assistance of trial counsel that Berrier first noted before the change-of-plea hearing.

The parties assume that these plea withdrawal issues are governed by the standard in Criminal Rule 11(d)(2)(B) -- whether the defendant "can show a fair and just reason for requesting the withdrawal." But that rule applies to withdrawal "after the court accepts the plea but, before it imposes sentence." On the other hand, Rule 11(e) provides that "[a]fter the court imposes sentence, the defendant may not withdraw a plea of guilty . . . and the plea may be set aside only on direct appeal or collateral attack." See United States v. Van Thournout, 100 F.3d 590, 593 (8th Cir. 1996). Here, Berrier's motion to withdraw was made after the district court imposed sentence, indeed, after his successful appeal of that sentence.

"[W]hen a defendant seeks to avoid an appellate waiver contained in a plea agreement by arguing, for the first time on appeal, that the government breached the plea agreement, this court will review the forfeited claim (and related claims) under the plain error test of [Criminal Rule] 52(b)." United States v. Helper, 7 F.4th 706, 710 (8th Cir. 2021) (quotation omitted), citing Puckett v. United States, 556 U.S. 129, 134 (2009). Here, where the Plea Agreement included both direct appeal and collateral attack waivers, we think the issue requires careful analysis. But it has not been briefed. See United States v. Barthman, 983 F.3d 318, 323 (8th Cir. 2020), aff'g No. 16-cr-00284, 2019 WL 3841017 (D. Minn. Aug. 15, 2019); United States v. Floyd, 931 F.3d 709, 711 (8th Cir. 2019).

**B.**

Berrier first argues the district court erred in denying his belated motion to withdraw his guilty plea based on prosecutorial misconduct -- the government's

alleged breach of the Plea Agreement. We review denial of a motion to withdraw and a motion for reconsideration for abuse of discretion. See United States v. McHenry, 849 F.3d 699, 705 (8th Cir. 2017). "There is no *right* to withdraw; the plea of guilty is a solemn act not to be disregarded because of belated misgivings about its wisdom." United States v. Ladue, 866 F.3d 978, 980 (8th Cir. 2017) (emphasis in original) (quotation omitted).

Berrier initially filed the motion to withdraw *pro se* when he was represented by counsel. The district court ordered counsel Barttelt to respond to his client's motion. Counsel failed to respond. A district court "has no obligation to entertain pro se motions filed by a represented party." United States v. Haubrich, 744 F.3d 554, 557 (8th Cir. 2014) (quotation omitted). But counsel's request at resentencing that the court reconsider its denial preserved Berrier's aguments for appeal.

The determinative question is whether the government did breach the Plea Agreement. "Where, as here, the written plea agreement has been accepted by the district court, 'we generally interpret the meaning of the terms in the agreement according to basic principles of contract law.'" United States v. Noriega, 760 F.3d 908, 910-11 (8th Cir. 2014), quoting United States v. Mosley, 505 F.3d 804, 808 (8th Cir. 2007). Thus, "we look to the agreement's provisions." United States v. Quebedo, 788 F.3d 768, 775 (8th Cir. 2015) (quotation omitted). We review issues of plea agreement interpretation and enforcement *de novo*. United States v. Leach, 491 F.3d 858, 863 (8th Cir.), cert. denied, 552 U.S. 1053 (2007).

Berrier argues the parties stipulated to base offense level 28 in the Plea Agreement, so the government's motion for an upward variance from the resulting advisory guidelines range breached the Agreement. "The government breaches the plea agreement if it presents evidence that is contrary to a relevant stipulation within the agreement." United States v. Wells, 63 F.4th 1180, 1185 (8th Cir. 2023); see United States v. Lara, 690 F.3d 1079, 1082-83 (8th Cir. 2012); United States v.

-10-

DeWitt, 366 F.3d 667, 669-71 (8th Cir. 2004). In Lara, for example, after stipulating to drug quantity and the corresponding base offense level in the plea agreement, the government introduced evidence of uncharged conduct that supported a higher drug quantity, and the district court found the defendant responsible for the higher quantity. Lara appealed and we reversed, concluding the government's introduction of evidence increasing drug quantity above the stipulated quantity breached the plea agreement. Lara 690 F.3d at 1083. Here, Berrier argues that the government's motion for an upward variance breached the Plea Agreement because it "undermine[d] the stipulation of applicable Guideline calculations." We disagree.

In the Plea Agreement, the government only stipulated to Berrier's base offense level and two applicable two-level increases. The government's position at sentencing and resentencing was consistent with these stipulations, which the district court adopted. The Plea Agreement was silent on the issue of Guidelines variances. It expressly provided "that the Court is not bound by these stipulations," which confirmed the district court's sentencing authority to grant upward and downward variances from an advisory guidelines range. And it expressly "reserve[d] the [government's] right to bring any and all facts which it believes are appropriate to the attention of the Court."

The government does not breach a plea agreement by taking a position on an issue that "had not been agreed to or specifically listed in the agreement." Noriega, 760 F.3d at 910-12, quoting Leach, 491 F.3d at 864. In Noriega, the plea agreement stipulated to drug quantity; the defendant argued, relying on Lara and DeWitt, that this barred the government from introducing role-in-the-offense evidence that "impermissibly s[ought] to expand the drug-quantity stipulation to bind the Government on issues of relevant conduct and Noriega's role in the offense in a manner not supported by the plain meaning of the plea agreement's text." We rejected this argument, concluding the government's evidence was not contrary to the terms of the plea agreement. Id. Likewise here, the government's motion for upward

-11-

variance based on facts in the resentencing record is not contrary to the terms of the Plea Agreement. Thus, we conclude there was no breach of the Plea Agreement.

Berrier further argues the government breached the Plea Agreement because, as the district court recognized, the government stipulated to the "inapplicability" of the five-level increase recommended in the PSR but then used the same conduct to seek an upward variance, thereby "circumventing the Plea Agreement terms." Cf. United States v. E.V., 500 F.3d 747, 753-54 (8th Cir. 2007). But unlike the plea agreement in E.V., the government did not stipulate in the Plea Agreement that offense characteristics relevant to the § 4B1.5(b)(1) increase -- that Berrier "engaged in a pattern of . . . prohibited sexual conduct" -- did not apply to his offense. Because the government complied with the limited Guidelines stipulations, and the Plea Agreement "contained no provision limiting the scope of relevant conduct," the government did not breach the Plea Agreement by moving for an upward variance on this ground. Noriega, 760 F.3d at 911. As we recently said in United States v. Ord, "During the plea agreement negotiations, both parties were free to stipulate that the government would be barred from seeking a variance under § 3553(a). They did not." No. 22-2163, 2023 WL 5320035, at *2 (8th Cir. Aug. 18, 2023).

For these reasons, we conclude the government did not breach the Plea Agreement. Therefore, the district court did not err in denying Berrier's untimely motion to withdraw the plea on this ground.

## C.

Berrier argues the district court abused its discretion when it failed to hold a hearing on his motion to withdraw due to ineffective assistance of trial counsel Glover. See United States v. Morrison, 967 F.2d 264, 268 (8th Cir. 1992) (standard of review). Berrier first complained of counsel Glover's representation prior to the change-of-plea hearing in September 2020. At the change-of-plea hearing later that

-12-

month, the district court questioned Berrier about trial counsel Glover before accepting the plea:

> THE COURT: . . . Are you satisfied with or dissatisfied with the legal representation he's given you so far?
>
> THE DEFENDANT: I'm not completely happy with it, but I understand it.

At the start of the remote sentencing hearing on December 18, 2020, the court asked:

> THE COURT: . . . Now, Mr. Berrier, I took your plea on September the 25th of 2020. You entered a plea of guilty to Count 1 of the indictment that charged you with knowing enticement of a minor to engage in sexual activity. You were represented by Mr. Glover at that hearing, and you are represented by him now.
> Are you satisfied with the legal representation he's given you so far?
>
> THE DEFENDANT: Yes.

Yet Berrier did not move to withdraw the plea on this ground before the district court imposed its initial sentence, nor in his initial appeal.

We conclude the district court did not err or abuse its discretion, and certainly did not plainly err, by denying this untimely motion without a hearing. "[T]he trial court can deny a motion to withdraw a guilty plea without holding an evidentiary hearing if the allegations in the motion are inherently unreliable, are not supported by specific facts or are not grounds for withdrawal even if true." United States v. Forjan, 66 F.4th 739, 752 (8th Cir. 2023) (quotation omitted).

"Allegations that contradict a defendant's statements at the change of plea hearing 'are inherently unreliable.'" McHenry, 849 F.3d at 706, quoting United

-13-

States v. Harris-Thompson, 751 F.3d 590, 603 (8th Cir.), cert. denied, 574 U.S. 965 (2014). "The failure to assert objections to counsel's performance at the change-of-plea hearing refutes any claim of ineffective assistance of counsel as a basis for withdrawing the plea." United States v. Trevino, 829 F.3d 668, 672 (8th Cir. 2016). Here, Berrier's claims of ineffective assistance were repeatedly contradicted by Berrier's own sworn statements at his change-of-plea hearing and at his initial sentencing as well as by the clear language of the Plea Agreement Berrier signed.

Moreover, even if Berrier had moved to withdraw his plea before the district court imposed the sentence, so that Rule 11(d)(2)(B)'s fair-and-just-reason standard clearly applies, Berrier failed to demonstrate "that [counsel Glover's] performance was deficient and that [Berrier] was prejudiced by it." United States v. Cruz, 643 F.3d 639, 642 (8th Cir. 2011) (quotation omitted). "A conclusory assertion of innocence simply does not satisfy his burden of showing a fair and just reason for permitting a withdrawal of what he had solemnly made under oath." Id. at 643 (quotation omitted).

The district court thus did not abuse its discretion or plainly err in refusing to hold an evidentiary hearing on Berrier's conclusory assertions of ineffective assistance and denying Berrier's motion for leave to withdraw his plea on this ground.

The judgment of the district court is affirmed. Judge Kelly joins the Court's opinion, except for Part III A.

_____