# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1319
_____

United States of America

*Plaintiff - Appellee*

v.

Jeremy Wade Wilson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 16, 2026
Filed: June 29, 2026
[Unpublished]
_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.
_____

PER CURIAM.

Jeremy Wilson pled guilty to six counts of wire fraud for violating 18 U.S.C. §§ 1343 and 2326. He did so without a plea agreement but later moved to withdraw his plea before sentencing and requested a hearing. The district court[1] decided a

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

hearing was unnecessary, denied Wilson's motion to withdraw his guilty plea, and sentenced him to 80 months of imprisonment. Wilson appeals, arguing the district court should not have denied his motion without holding a hearing and that his sentence is substantively unreasonable. We affirm.

Wilson owned Publishers Elite, a magazine telemarketing company, from 2013 to 2019. During this period, Publishers Elite employed a fraudulent scheme to sell magazine subscriptions. Using scripts Wilson wrote and provided, Publishers Elite's telemarketers called magazine subscribers, represented they were calling from the magazine and that their existing subscription was expiring, and offered to renew their subscription at a discounted rate. But instead of renewing the person's existing subscription, Wilson's telemarketers sold them "entirely new magazine subscriptions." And when they, thus succeeded in defrauding someone, Wilson directed his telemarketers to target that person again and again. They called those victims "within 10 to 12 months of their previous sale" and repeated the same scam. Altogether, Publishers Elite swindled over 14,000 people, many of whom were elderly, out of more than $4,800,000.

Wilson was indicted on six counts of wire fraud as a result of this scheme. The government offered him a plea agreement, and he rejected it. But Wilson contacted the government the day before his trial was scheduled to start and indicated he was considering pleading guilty. The government offered him a revised plea agreement, which based his offense level on a loss amount of $4,800,000 and applied several enhancements based on the number of victims, their vulnerability, and his supervisory role in the fraud. Wilson rejected this agreement too and instead decided to plead guilty without an agreement to preserve his right to contest the loss amount and these enhancements at sentencing.

When Wilson notified the district court he intended to plead guilty, it cancelled his trial and held a change-of-plea hearing. At the hearing, the court asked Wilson, "I understand that you are proposing to enter a guilty plea this morning; is that correct?" Wilson responded, "Yes, Your Honor." The court then told Wilson

it had to "make certain findings" before it could accept his plea, including that he was "competent to make this decision, that [he] underst[ood] the charges and the potential consequences of a guilty plea, that the plea [wa]s free and voluntary and ha[d] a factual basis which support[ed] it."

The district court swore Wilson in, and he testified his mind was "very" clear, that he had received a copy of his indictment, that he did not have any questions about his charges, that he believed he had fully discussed his indictment and charges with his attorney, and that he was satisfied with his attorney's assistance. Wilson's attorney then asked numerous questions regarding the scam, and Wilson testified to the events as they are outlined above. The district court accepted this testimony as "a sufficient factual basis for conviction on the six counts charged . . . ." It then confirmed no one had "made any promises to try to get [Wilson] to plead guilty," that no one had "tr[ied] to force [him] or threaten[ed] [him] in any way to get [him] to plead guilty," and that he understood the consequences of his plea. Based on Wilson's testimony, the district court found he was "fully competent," "capable of entering informed pleas to the six charges," "fully aware of the nature of the charges and that he underst[ood] the potential consequences of the plea." So the court concluded Wilson's plea was "knowing and voluntary" and supported by a sufficient factual basis, and it, therefore, accepted the plea.

During the next six months, the Probation Office filed a Presentence Investigation Report (PSR), both parties filed objections to the PSR, along with sentencing memoranda, the Probation Office filed an Addendum to the PSR, and Wilson moved for a downward variance. But at his sentencing hearing, Wilson — for the first time — expressed dissatisfaction with his attorney and asked "for time" to consider whether to file a motion to withdraw his plea and to retain new counsel. The district court continued Wilson's sentencing, and his attorney withdrew. Wilson then engaged new counsel and moved to withdraw his plea, arguing he pled guilty because "he did not feel prepared for trial," did not "fully understand the ramifications of his guilty plea," and "felt pressure to make quick

decisions because his plea was offered on what was scheduled as the first day of trial." Wilson also asked the court to hold a hearing on his motion.

The district court denied Wilson's motion without a hearing. In a written order, it explained Wilson had not shown a fair and just reason for withdrawing his guilty plea because the evidence showed he was prepared for trial, that he understood the consequences of his plea, and that his counsel had not been ineffective. The district court also noted any claim of innocence would be undercut by a written statement Wilson provided the Probation Office "admit[ing] to the offense conduct and express[ing] remorse," that Wilson had waited almost six months to move to withdraw his plea, and that the government would be prejudiced if he withdrew his plea. After denying his motion, the court sentenced Wilson to 80 months of imprisonment.

Wilson appeals, arguing the district court erred by denying his motion to withdraw his plea without holding a hearing and that his sentence is substantively unreasonable.[2] We review both issues for abuse of discretion and discuss them in turn. *See United States v. Alvarado*, 615 F.3d 916, 920 (8th Cir. 2010) (quoting *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992)); *United States v. Carnes*, 22 F.4th 743, 750 (8th Cir. 2022).

Starting with the hearing, district courts may "deny a motion to withdraw a guilty plea without holding an evidentiary hearing 'if the allegations in the motion are inherently unreliable, are not supported by specific facts or are not grounds for withdrawal even if true.'" *Alvarado*, 615 F.3d at 920 (quoting *Morrison*, 967 F.2d at 268). Wilson raised three grounds for withdrawing his plea: (1) "he did not feel prepared for trial"; (2) he did not "fully understand the ramifications of his guilty

---

[2]Wilson did not raise the denial of his motion to withdraw his guilty plea in his brief. So we will not address that issue. *See, e.g.*, *United States v. O'Neal*, 17 F.3d 239, 243 n.8 (8th Cir. 1994) ("[A]n appellate court may review only the issues specifically raised and argued in an appellant's brief." (quoting *United States v. Simmons*, 964 F.2d 763, 777 (8th Cir. 1992))).

plea"; and (3) "he felt pressure to make quick decisions because his plea was offered on what was scheduled as the first day of trial." We agree with the district court; none of these bases required a hearing.

For instance, Wilson did not provide any evidence that he was unprepared for trial. To the contrary, he filed his witness list before pleading guilty, and he testified at his change-of-plea hearing that he was fully satisfied with his attorney's representation. *See United States v. Trevino*, 829 F.3d 668, 672 (8th Cir. 2016) ("The failure to assert objections to counsel's performance at the change-of-plea hearing refutes any claim of ineffective assistance of counsel as a basis for withdrawing the plea."). And his arguments that he did not understand the consequences of his guilty plea and that he felt pressure to plead guilty are inconsistent with his testimony at the change-of-plea hearing. *See United States v. Berrier*, 110 F.4th 1104, 1113 (8th Cir. 2024) ("Allegations that contradict a defendant's statements at the change of plea hearing 'are inherently unreliable.'" (quoting *United States v. McHenry*, 849 F.3d 699, 706 (8th Cir. 2017))). As detailed above, the district court explained the various ramifications of Wilson's plea at length, and Wilson testified that he understood. He also specifically testified that no one had forced or threatened him to plead guilty "in any way . . . ." So the district court did not abuse its discretion when it decided not to hold a hearing on Wilson's motion to withdraw his guilty plea.

Turning to Wilson's sentence, he generally states that the district court "placed too much weight on" certain 18 U.S.C. § 3553(a) factors, including "the seriousness of the offense, deterrence, and protection of the public from further crimes of the defendant," and not enough on the disparity between his sentence and those given to similar defendants. But the only specific argument Wilson makes is that one defendant, who he claims was similarly situated, received a lighter sentence than him. This argument is a nonstarter. "[W]hen we consider sentencing disparities, we are . . . concerned only with national disparities," not disparities between two particular defendants. *United States v. Schram*, 128 F.4th 922, 929 (8th Cir. 2025).

-5-

What's more, Wilson and the defendant he proposed as a comparator are not similarly situated. That defendant immediately accepted responsibility and pled guilty, and she significantly aided the government's investigation into the fraudulent magazine telemarketing industry. Wilson, on the other hand, did not decide to plead guilty until the day before his trial was supposed to start, and there is no evidence in the record suggesting he provided any assistance to the government. *See United States v. Driscoll*, 122 F.4th 1067, 1071 (8th Cir. 2024) ("Disparate sentences among *dis*similar defendants are not unwarranted." (cleaned up)). Consequently, the district court did not abuse its "'broad discretion' in weighing the § 3553(a) factors." *United States v. Marcussen*, 15 F.4th 855, 859 (8th Cir. 2021) (quoting *United States v. Loggins*, 966 F.3d 891, 893 (8th Cir. 2020)); *see also United States v. Morrow*, 50 F.4th 701, 704 (8th Cir. 2022) ("[W]e 'give due deference to the wide latitude afforded district courts when weighing the sentencing factors and assigning some greater weight than others.'" (quoting *United States v. John*, 27 F.4th 644, 651 (8th Cir. 2022))).

As for the length of his sentence, the district court calculated Wilson's Guidelines range as 168 to 210 months of imprisonment and then imposed an 80-month sentence. "When the district court varies downward and imposes a below-Guidelines sentence, as it did in this case, 'it is nearly inconceivable that the court abused its discretion in not varying downward still further.'" *See United States v. Jones*, 698 F.3d 1048, 1051 (8th Cir. 2012) (quoting *United States v. Lazarski*, 560 F.3d 731, 733 (8th Cir. 2009)). And it did not abuse its discretion here. Despite owning Publishers Elite, creating the dishonest script, and directing his telemarketers to use it, Wilson received a very generous downward variance from the district court. His sentence is less than half of the bottom end of what the Guidelines recommended. Given this, and that Wilson's misconduct directly resulted in over 14,000 people, many of whom were elderly and vulnerable, being conned out of almost $5 million, the district court did not abuse its discretion when it decided not to vary downward further. *See United States v. Coon*, 187 F.3d 888, 899 (8th Cir. 1999) (affirming upward departures based upon the "amount of fraud loss and the large number of fraud victims").

We affirm the district court's judgment for these reasons.

_____